UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUDOR INSURANCE COMPANY,
    Plaintiff,

v.

ASSOCIATED LAND TITLE, LLC, and
FIDELITY NATIONAL TITLE
INSURANCE COMPANY,
    Defendants,    /

Case No. 08-11831

FIDELITY NATIONAL TITLE
INSURANCE COMPANY,    Honorable Patrick J. Duggan
    Cross-Claimant,

v.

ASSOCIATED LAND TITLE, LLC,
    Cross-Defendant,    /

FIDELITY NATIONAL TITLE
INSURANCE COMPANY,
    Third-Party Plaintiff,

v.

STEPHEN J. SMITH,
    Third-Party Defendant,    /

## OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

    On February 22, 2008, Tudor Insurance Company ("Tudor") filed this diversity action seeking a declaration that it has the right to rescind an errors and omissions ("E&O") liability insurance policy issued to Associated Land Title, LLC ("Associated"),

with an effective date of May 1, 2007.[1]  Tudor later amended its complaint to add Fidelity National Title Insurance Company ("Fidelity") as a defendant due to Fidelity's claims under the E&O policy that are the subject of this suit.  On October 18, 2010, Tudor filed a second amended complaint to add a request for a declaratory judgment that it is not liable for the claims maintained by Fidelity because those claims are excluded from coverage under the unambiguous terms of the E&O policy.

Presently before the Court is Tudor's renewed motion for partial summary judgment with respect to its amended request for declaratory relief, filed pursuant to Federal Rule of Civil Procedure 56(a) on November 17, 2010.  Fidelity filed a response to the motion on December 13, 2010; Tudor filed a reply brief on December 27, 2010.[2]  On March 9, 2011, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to Tudor's motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

**I.      Standard for Summary Judgment**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

[1] Associated conducted business as Devon Title, LLC and is referred to as Devon in some of the pleadings and/or evidence.

[2] Associated has not responded to the motion.

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

Tudor provides E&O liability insurance for professionals including title insurers. Associated is a title company that provided title insurance and closing/escrow services on real estate transactions as an agent for Fidelity from May 22, 2003 until March 30, 2007.

On April 16, 2007, Associated completed an application for E&O liability insurance through Tudor. (Doc. 60 at 2.) Among other things, the insurance application included the following questions:

> 34. Have any claims, suits or proceedings been made during the past five years against any of you or your firm, your predecessors in business or against any present partners, owners, officers or employees?
> . . . .
> 35. Is the applicant or any person to be covered by this insurance aware of any alleged act, circumstance, situation, error or omission which may result in a claim being made against you or any of the persons or firm described?

(*Id.*)  Associated, by its principal Stephen Smith ("Smith"), marked "no" to both questions.  (*Id.* at 2-3.)  Tudor subsequently accepted the Associated application and issued a policy bearing policy number 0011496, effective May 1, 2007 through May 1, 2008, with a "Retroactive Date" of June 1, 2003.  (Tudor's Mot. Ex. 1.)

After the policy was issued, Tudor discovered that Fidelity had asserted several claims against Associated prior to the effective date of the policy for alleged errors and omissions in handling real estate transactions.  Tudor therefore filed this action on February 22, 2008, alleging that Associated made material representations on the insurance application and seeking a declaration that the policy therefore should be rescinded or declared void *ab initio*.[3]  Specifically, Tudor alleges that Associated's answers to questions 34 and 35 amounted to material misrepresentations justifying rescission because Associated received notice of a possible claim against it by Fidelity in August 2006, and a lawsuit related to that claim was actually filed against Associated in March 2007, before Associated submitted its application for E&O insurance.

---

[3]Tudor originally filed its complaint in the District Court for the Western District of Michigan.  (Doc. 1.)  Pursuant to the parties' stipulation, the matter was transferred to the Eastern District of Michigan on April 25, 2008.  (*Id.*)

4

On June 26, 2008, Tudor amended its complaint to add Fidelity as a defendant in light of its interest in the outcome of this matter. (Doc. 9.) Fidelity filed a cross-claim against Associated and a third-party complaint against Smith on October 2, 2008. (Doc. 16.) In its cross-claim, Fidelity seeks to recover expenses it incurred as a result of Associated's alleged errors and omissions when Associated provided title insurance and/or closing/escrow services on ten real estate transactions as an agent for Fidelity. Fidelity brought its third-party complaint against Smith based on his personal guarantee of Associated's duties and liabilities.

Tudor thereafter filed a motion for summary judgment with respect to its claim that the policy should be rescinded or declared void *ab initio* due to Associated's alleged material misrepresentations in the insurance application. (Doc. 20.) On February 22, 2010, this Court issued an opinion and order denying Tudor's motion for summary judgment. (Doc. 60.) The Court found that Associated had notice of a claim against it when it submitted the E&O policy application to Tudor, and that therefore the application contained a misrepresentation. (*Id*. at 6-7.) Nevertheless, the Court concluded that there was a genuine issue of material fact with respect to whether the misrepresentation was material and therefore voided or justified a rescission of the policy. (*Id*. at 7-8.)

On May 14, 2010, Tudor filed a motion for partial summary judgment in which it sought a declaration that, even if the policy is not rescinded or declared void *ab initio*, it is not liable for the claims maintained by Fidelity because those claims are excluded from coverage under the policy's plain terms. (Doc. 63.) Fidelity filed a response to Tudor's motion, arguing foremost that Tudor waived any claim that coverage is excluded under

5

the policy when it filed a declaratory judgment action seeking *only* a declaration that the policy is void *ab nitio* or subject to rescission. (Doc. 71.) According to Fidelity, an insurer is barred by the doctrine of waiver from asserting defenses that it failed to assert in its pleadings in a declaratory judgment action. This Court held a hearing with respect to Tudor's motion on October 7, 2010.

At the beginning of the motion hearing, Tudor's counsel indicated that Tudor would seek leave to amend its complaint if the Court found that the declaratory relief sought in its first amended complaint was not sufficiently broad to cover its request for a declaratory judgment that the claims are excluded from coverage. Counsel for Tudor and then counsel for Fidelity next addressed Fidelity's argument that Tudor had waived its ability to assert its proposed amended request. Fidelity's counsel argued *inter alia* that Fidelity would be severely prejudiced if Tudor was allowed to amend its complaint and raise new issues more than two years after it filed its initial complaint. At the conclusion of the hearing, this Court concluded that Tudor should be allowed to amend its complaint and denied without prejudice Tudor's motion for partial summary judgment. The Court indicated that Tudor may renew its motion, if it chooses to do so, within ten days of any response to the amended complaint. The Court issued an order setting forth its ruling on October 7, 2010. (Doc. 74.)

Tudor filed its second amended complaint on October 18, 2010. On November 8, 2010, Fidelity filed an answer to the complaint. As indicated previously, Tudor filed the pending renewed motion for partial summary judgment on November 17, 2010.

Tudor argues in its pending motion, as it did in its previous motion for partial

6

summary judgment, that even if the policy is not rescinded or declared void *ab nitio*, it is not liable for the claims maintained by Fidelity because those claims are excluded from coverage under the policy's plain terms. Tudor relies on three conditions that must be satisfied under the policy for coverage to apply.

First, the policy requires that "the Insured had no knowledge prior to the effective date of this policy [i.e. May 1, 2007] of such actual or alleged negligent act, error, omission or circumstance likely to give rise to a claim." (Tudor's Mot. Ex. 1 § I.A.2.) Second, the policy contains the following language concerning exclusions to coverage:

> III. EXCLUSIONS
>
> Coverage provided in this policy does not apply to any loss in connection with or arising out of or in any way involving:
> . . .
>
> F. Any act, error or omission occurring prior to the effective date of this policy if there is other insurance applicable or the insured at the effective date of this policy knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit.

(*Id*. Ex. 1 § III.F.) Finally, the policy sets forth a $25,000 per-claim deductible. (*Id*. at 1.)

In response to Tudor's motion, Fidelity again argues that Tudor waived any claim that coverage is excluded under the policy when it filed a declaratory judgment action seeking *only* a declaration that the policy is void *ab nitio* or subject to rescission. Fidelity also reasserts its argument that it will suffer prejudice if Tudor is permitted to claim its coverage defenses at this juncture. In addition to the prejudice Fidelity set forth for the Court at the October 7, 2010 motion hearing, Fidelity also claims that it was provided no additional time for discovery on the issues raised by Tudor's renewed motion. Finally,

7

Fidelity argues that even if Tudor did not waive its coverage defenses, the plain language of the policy does not exclude the claims at issue.

With respect to this last argument, Fidelity contends that the insured must not have "culpable knowledge" of a claim prior to the policy's effective date to satisfy the policy's pre-conditions for coverage and that Associated did not have "culpable knowledge" of Fidelity's claims before the policy's effective date. According to Fidelity, its communications to Associated that Fidelity received claims were insufficient to provide Associated with "culpable knowledge." Fidelity argues that "[a]t minimum, culpable knowledge cannot be said to arise until such point that the title insurer has reason to believe it may suffer a loss, that the title agent may be responsible for the loss, and that the insurer communicates this knowledge and belief to the agent." (Fidelity's Resp. Br. at 23.)

### III.    Applicable Law and Analysis

This Court already considered and rejected Fidelity's arguments with respect to whether Tudor should be allowed to amend its complaint and assert its coverage defenses. The only new argument that Fidelity raises with respect to the propriety of that amendment is its claim that it did not have the opportunity to conduct discovery on the issues raised in Tudor's motion. Tudor, however, did not indicate that it needed further discovery prior to and when the Court granted Fidelity leave to amend its complaint and, perhaps more importantly, it never states that it needs further discovery in order to respond to Tudor's renewed motion. *See* Fed. R. Civ. P. 56(f). The proper procedure for Fidelity to challenge the Court's October 7, 2010 decision granting Tudor leave to amend

8

its complaint was to file a motion for reconsideration, which it did not do. Nevertheless, even considering the arguments that Fidelity now raises, the Court still concludes that allowing Tudor to amend its complaint to assert its coverage defenses was proper.

Pursuant to Michigan law, which governs this diversity action, an insurance company generally is deemed to have waived or is estopped from raising defenses that it failed to raise when it denied coverage to its insured. *Kirschner v. Process Design Assoc., Inc.*, 459 Mich. 587, 593, 592 N.W.2d 707, 709 (1999) (citation omitted). One limitation on the application of waiver and estoppel is that "the doctrine will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy."[4] *Id.* at 594, 592 N.W.2d at 709-10 (citing *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638, 654, 177 N.W. 242 (1920) and *Lee v. Evergreen Regency Cooperative*, 151 Mich. App. 281, 285, 390 N.W.2d 183 (1986)). The *Kirschner* Court provided the following reasoning for this

---

[4]The Michigan courts have identifies two classes of cases where "estoppel or waiver was applied to bring within coverage risks not covered by policy terms or expressly excluded from the policy":

> The first class involves companies which have rejected claims of coverage and declined to defend their insureds in the underlying litigation. In these instances, the Court has held that the insurance company cannot later raise issues that were or should have been raised in the underlying litigation. . . .
>
> The second class of cases . . . involves instances where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions.

*Smit v. State Farm Mut. Auto. Ins. Co.*, 207 Mich. App. 674, 680-81, 525 N.W.2d 528, 531 (1994) (citing *Lee*, 151 Mich. App. at 287, 390 N.W.2d at 183). The present matter does not fall within either class.

exception:

> This is because an insurance company should not be required to pay for a loss for which it has charged no premium. . . . [A]pplying the doctrine of waiver and estoppel to broaden the coverage of a policy would make a contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the [insurer] under the terms of the policy.  In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make.

459 Mich. at 594, 592 N.W.2d at 710 (internal citations omitted).[5]

As an initial matter, Tudor did previously assert the coverage defenses it now raises in its pending motion for summary judgment.  When presented with the claims at issue in this lawsuit, Tudor sent Associated letters in which Tudor asserted these defenses.[6]  (Tudor's Mot. Exs. 12, 15, 20, 23, 26, 30, 35, 40.)  Even if Tudor did not assert these defenses previously, applying the doctrine of waiver or estoppel would reform the insurance policy by extending coverage beyond its terms.  It would modify the $25,000 deductible set forth in the policy and possibly require coverage for claims specifically excluded from protection.  As Tudor did not waive its coverage defenses, the

---

[5]Fidelity cites to Justice Kelly's concurrence in *Kirschner*, in which Justice Kelly advocates for the imposition of court rule requiring an insurer defending under a reservation of rights to provide notice to the court and other parties of its intention.  459 Mich. at 599, 592 N.W. 2d at 712 (Kelly, J., concurring).  Fidelity, however, has not cited a court rule adopted in accordance with Justice Kelly's suggestion.  Moreover, Tudor sent letters to Associated asserting its coverage defenses (*see* Tudor's Mot. Exs. 12, 15, 20, 23, 26, 30, 35, 40.) and undoubtedly Fidelity received those letters during discovery earlier in this litigation.

[6]Notably, neither Associated nor Fidelity has filed a complaint against Tudor seeking coverage under the policy, thereby necessitating Tudor to assert in any pleading its defenses to such claim(s).

10

Court will turn to the issue of whether the claims are excluded from coverage.

There are ten claims at issue in Fidelity's cross-claim and third-party complaint. Tudor argues that five of the ten claims are excluded from coverage because they do not exceed the $25,000 per claim deductible expressly set forth in the policy. These claims relate to the transactions for the following property: 5756 I Drive, South Leroy, MI (Claim No. 209955); 541 and 539 Avon Street, Lansing, MI (Claim No. 213913); 5434 Lowell, St. Johns, MI (Claim No. 229681); 1200 Kelsey Avenue, Lansing, MI (Claim No. 267672); and 64 Saratoga Avenue, Battle Creek, MI (Claim No. 210532). Fidelity does not challenge Tudor's assertion as to the damages sought for each of these claims and there can be no dispute that the plain language of the policy provides for a $25,000 per claim deductible. Thus the above-identified claims are excluded from coverage under the policy.

Of the remaining five claims, this Court already held in its February 22, 2010 decision that Associated had notice of one of the claims prior to May 1, 2007: the claim related to 2285 Vasilios, Novi, MI (Claim No. 222300). (Doc. 57 at 6-7.) The Court found that an August 2006 e-mail from a Fidelity representative to Associated referring to the transaction for that property "placed Associated on notice of an alleged error or omission that could result in a claim against Associated . . ." (*Id*.) In that e-mail, "a Fidelity representative notified Associated . . . that 'there may be liability by Associated Land Title dba Devon Title to Fidelity based upon the omissions' from a title insurance policy issued by Associated on behalf of Fidelity." (*Id*. at 6 (quoting Doc. 20 Ex. 4).) In response to Tudor's pending motion, Fidelity acknowledges this previous holding.

11

(Fidelity's Resp. Br. at 5.)

As set forth earlier, one of the conditions that must be satisfied for coverage to apply under the policy is that "the Insured [Associate] had no knowledge prior to the effective date of th[e] policy [i.e. May 1, 2007] of such actual or alleged negligent act, error, omission or circumstance likely to give rise to a claim." (Tudor's Mot. Ex. 1 § I.A.2.)  Additionally, the policy excludes from coverage "any loss in connection with or arising out of . . . [a]ny act, error or omission occurring prior to the effective date . . . if . . . the insured at the effective date . . . knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit." (*Id.* § III.F.)  Based on this plain language and the Court's earlier decision, there is no genuine issue of material fact as to whether coverage extends to the claim related to 2285 Vasilios.  It does not.  This leaves only the following four claims: (1) 204 Geneva Circle, Lansing, MI (Claim No. 246393); (2) 333 Elmside Road, Benton Harbor, MI (Claim No. 206988); (3) 845 Shelter Street, Springfield, MI (Claim No. 217038); and (4) 1990 East Packard Highway, Charlotte, MI (Claim No. 231290).

As to the Geneva Circle property, on April 26, 2007, Associated received correspondence indicating that Fidelity had been sent a claim related to the title for the property. (Def.'s Mot. Ex. 13.)  The following day, a Fidelity representative sent an e-mail to Associated's principal, Steve Smith, attaching the claim letter and requesting Associated's title and closing files for the transaction. (*Id.* Ex. 14.)  Based on this evidence, Tudor argues that Associated had knowledge of the alleged errors and the likelihood that they would lead to a claim prior to May 1, 2007.  Fidelity argues in

response that Associated only had "culpable knowledge" of the claim on November 14, 2007, when Fidelity informed Associated that Fidelity had suffered and paid a loss in connection with this transaction as a result of errors or omissions by Associated. (Fidelity's Resp. Ex. A.)

With respect to the Elmside Road property, on November 2, 2004, Associated received a letter indicating that Associated failed to pay off a lien at the time of closing on the transaction. (Tudor's Mot. Ex. 16.) On November 4, 2004, Smith prepared a memo to Fidelity representative Richard Gellersted,[7] related to the claim. (*Id*. Ex. 17.) The memo indicates that Smith attached an actual summons and complaint. (*Id*.) Smith sent a memo to Gellersted dated November 6, 2004, which summarizes the transaction and information Smith subsequently obtained relevant to the claim. (*Id*.) On November 11, 2004, Fidelity copied Smith on a letter to the claimant indicating Fidelity's receipt of the claim. (*Id*. Ex. 18.) The same day, Fidelity sent a facsimile to Smith that included the notice of claim and requesting Associated's files relating to the transaction. (*Id*. 19.) Despite this evidence, Fidelity argues that Associated did not have "culpable knowledge" of the claim until November 14, 2007, when Fidelity informed Associated that it had incurred losses as a result of Associated's errors or omissions. (Fidelity's Resp. Ex. A.)

Turning to the 845 Shelter Street property, on May 22, 2006, Associated was copied on Fidelity's letter acknowledging receipt of a claim asserting that two encumbrances were not included as an exception on the final title commitment or policy.

---

[7]Gellersted is identified in other materials as Fidelity's Vice President – Claims Counsel. (*See* Def.'s Mot. Ex. 18.)

13

(Tudor's Mot. Ex. 21; Ex. 3 ¶¶ 79-85.)  In a June 5, 2006 e-mail, Fidelity forwarded a copy of the claim letter, the foreclosure commitment, and Fidelity's acknowledgment letter to Associated and requested copies of the closing and title files.  (*Id*. Ex. 22.)  Fidelity nevertheless argues that Associated did not have "culpable knowledge" of the claim until November 14, 2007, when it received notice that Fidelity had incurred losses as a result of Associated's errors or omissions.  (Fidelity Resp. Ex. A.)

Lastly, on November 13, 2006, Fidelity sent Associated via e-mail a claim that Fidelity previously received with respect to the 1990 E. Packard Highway property and requested a copy of the title and closing file.  (Tudor's Mot. Ex. 25.)  Smith sent a response e-mail the same day.  (*Id*.)  Fidelity argues that Associated did not have "culpable knowledge" until October 8, 2007, when Fidelity informed Associated that it had incurred losses as a result of Associated's errors or omissions.  (Fidelity's Resp. Ex. C.

The evidence Tudor presents with respect to these four claims is not materially distinguishable from the August 9, 2006 e-mail relating to the Vasilios property that this Court held in its February 22, 2010 decision "placed Associated on notice of an alleged error or omission that could result in a claim against Associated . . ." (Doc. 57 at 6-7.)  In other words, Tudor's evidence establishes that before May 1, 2007, Associated was aware, at a minimum, of an "*alleged* negligent act, error, omission, or circumstance *likely to give rise* to a claim" arising from the four transactions and/or "knew or *could have reasonably foreseen* that such act, error or omission *might* be the basis for claim or suit." (Tudor's Mot. Ex. 1 §§ I.A.2, III.F (emphasis added).)  Fidelity argues that Associated

14

only acquired the knowledge required to invoke the exclusions when Fidelity informed Associated that it had incurred losses as a result of Associated's errors or omissions. However, as this Court also indicated in its earlier decision, "[t]hat Fidelity did not formally seek indemnification from Associated on the claim until [after the policy's effective date] does nothing to erase Associated's knowledge of the situation and its potential liability before . . ." (*Id*. at 7.)

In short, based on the evidence presented, and viewing that evidence in a light most favorable to Fidelity, there is no genuine issue of material fact regarding Associated's knowledge of foreseeable or actual claims arising from its alleged acts, errors, or omissions in transactions related to the four remaining properties. Associated possessed this knowledge prior to May 1, 2007.

### IV.   Conclusion

For the above reasons, this Court concludes that Tudor has not waived and should not be estopped from seeking a declaratory judgment that, even if the policy is not rescinded or declared void *ab initio*, Fidelity's claims are not entitled to coverage under the terms of the policy. The Court further concludes that the claims are excluded from coverage because they are for less than the $25,000 per claim deductible or because, prior to May 1, 2007, Associated was informed of alleged acts, errors, or omissions "likely to give rise to a claim" or which it "could have reasonably foreseen . . . might be the basis for claim or suit."

Accordingly,

**IT IS ORDERED**, that Plaintiff Tudor Insurance Company's Renewed Motion for

Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(a) is

**GRANTED**.

Dated: March 15, 2011                    <u>s/PATRICK J. DUGGAN</u>
                                                   UNITED STATES DISTRICT JUDGE

Copies to:
Michael J. Sullivan, Esq.
Colleen H. Burke, Esq.
Jacqueline E. Bayley, Esq.
Donald A. Rump, Esq.
Alison G. Fox, Esq.
Scott J. Fandre, Esq.
Wendy K. Walker-Dyes, Esq.